UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION
Case No. ____________________

| | | |
|---|---|---|
| MARTIN A. JACKSON,<br><br>Plaintiff,<br><br>vs.<br><br>SUMTER BEHAVIORAL HEALTH, LLC. d/b/a MIDLANDS BEHAVIORAL HEALTH HOSPITAL,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **<u>COMPLAINT</u>**<br><br>**JURY TRIAL DEMANDED** |

COMES NOW, the Plaintiff, MARTIN A. JACKSON, by and through undersigned counsel, who alleges and says unto this Honorable Court the following:

## <u>INTRODUCTION</u>

1. This is an action seeking declaratory judgment, equitable relief, compensatory and punitive damages, costs, and attorney's fees for discrimination based on sex and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, § 701 et. seq., 42 U.S.C. § 2000e et seq.; along with 1991 Civil Rights Act, as amended ("Title VII" ).

2. This Court has jurisdiction of this matter under 42 U.S.C. § 2000e-5(f), and under 28 U.S.C. § 1331 and 1343(4).

3. Pursuant to 28 U.S.C. § 1391, venue is properly laid in this district because Defendant conducts substantial, systematic, and continuous business activity in this

district; is subject to personal jurisdiction in this district; and, because all of the acts underlying this lawsuit occurred in this district.

4. Compensatory and punitive damages are both sought pursuant to the 1991 Civil Rights Act, et seq. as amended, as well as the 1964 Civil Rights Act, Title VII of the 1964 Civil Rights Acts, Section 704(a), et seq. and Section 703(a) et seq. of the said Act.

5. Furthermore, Plaintiff seeks attorney's fees for the bringing of this action pursuant to the 1976 Civil Rights Attorney's Fees Act and other appropriate attorney fees statutes authorized by law.

6. Plaintiff, Martin A. Jackson, is a male and a citizen of the United States and a resident of Sumter County, South Carolina.

7. Plaintiff is informed that Defendant, Sumter Behavioral Health, LLC is a limited liability company incorporated in Delaware and operating the business Midlands Behavioral Health Hospital, an inpatient psychiatric hospital located in Sumter, South Carolina.

8. Plaintiff was employed with Defendant as Maintenance Director from approximately April 2024 to October 10, 2025.

9. Defendant is an employer for Plaintiff within the meaning of 42 U.S.C. §2000e-(b).

10. Over the course of Plaintiff's employment, Defendant, through employees, subjected Plaintiff to a discriminatory and retaliatory work environment that ultimately led to his termination.

11. Plaintiff filed two (2) charges of discrimination with respect to his employment. Plaintiff's first Charge of Discrimination (SHAC #4-25-50/ EEOC #14C-2025-

00821) against Defendant was dual filed July 28, 2025. Plaintiff's second Charge of Discrimination (SHAC #1-25-35/EEOC #14C-2025-01120) against Defendant was dual filed October 13, 2025.

12. The Plaintiff has exhausted all administrative remedies in that Plaintiff received a Notice of Right to Sue from the South Carolina Human Affairs and Equal Employment Opportunity Commission dated May 28, 2026, regarding the first charge, and dated June 15, 2026, regarding the second charge.

13. Plaintiff has complied fully with all prerequisites to jurisdiction in this Court and brings this action within ninety (90) days of the receipt of the SHAC and EEOC Right to Sue Notices.

## STATEMENT OF FACTS

14. Plaintiff was employed with Defendant as Maintenance Director/Director of Plant Operations from approximately April 2024 to October 10, 2025.

15. Plaintiff worked in Defendant's business location in Sumter, South Carolina, where company leadership was largely female. Plaintiff was performing satisfactorily with no significant discipline and positive evaluation, before Plaintiff engaged in protected activity of complaining of civil rights violations.

16. On or about May 27, 2025, Plaintiff was working on a project for Defendant and began working with a business consultant. Before Plaintiff and the consultant were going to leave in a vehicle, the building consultant would suggest that Plaintiff ride on his lap.

17. When Plaintiff objected to the consultant's comments, the consultant laughed and responded "but it will be okay if you ride in my lap."

18. Additionally, when pushing a cart in the building, the building consultant came up behind Plaintiff and pushed on Plaintiff's lower back.

19. These advances were unwanted and unwelcomed by Plaintiff; and Plaintiff was subjected to sexual advances of the consultant because of Plaintiff's sex.

20. After the incident of May 27, 2025 with the business consultant, Plaintiff did not work around the consultant the next day, on May 28, 2025, but did support the project by providing tools and materials.

21. The business consultant acted aggressively toward Plaintiff, yelling about Plaintiff bringing him buckets, and creating work safety hazards by tossing around sixty pound bags and working with concrete mix inside the building creating a breathing and dust issue, permanently damaging tables and chairs.

22. After Plaintiff expressed his concerns to the business consultant about the unsafe work environment created by throwing bags, Plaintiff observed the consultant who sexually harassed him speaking to Defendant CEO; and then Defendant CEO and HR representative notified Plaintiff on May 28, 2025, that he was placed on final written warning, despite Plaintiff not having any previous disciplinary actions or write ups.

23. During the final written warning disciplinary meeting, Defendant informed Plaintiff for the first time that he was disciplined for supervising Plaintiff's son, which Plaintiff immediately refuted, as the allegation was untrue. Then the CEO took issue

with Plaintiff not informing her that his son worked there, stating that she needed to know who Plaintiff was sleeping with.

24. During the final written warning disciplinary meeting, Plaintiff notified Defendant that he believed the discipline and treatment was in retaliation for his refusal of the building consultant's sexual harassment the day before and he was uncomfortable. No action was taken by the CEO or HR in response to Plaintiff's claims.

25. Plaintiff signed a dual filed SHAC/EEOC charge of discrimination (EEOC 14C-2025-00821) on July 28, 2025, received by the EEOC on July 30, 2025, regarding this sexual harassment and retaliation.

26. On August 12, 2025, almost immediately after the EEOC received the complaint of discrimination, Defendant CNO, CEO and HR representatives called Plaintiff into a meeting claiming his work performance was below standard. When Plaintiff attempted to refute this allegation, he was ordered to quit speaking.

27. On August 22, 2025, Defendant issued Plaintiff another "final warning" because he used the term "you cats" when referring to a group of people in a safety meeting and the CEO said it was "offensive" for a 58 year old man to say "you cats get it".

28. On August 22, Plaintiff complained via email to Karen Miller in corporate and others in leadership that Plaintiff was being harassed within a week of the CEO receiving paperwork from Human Affairs and that her actions were clear retaliation against him in response to the discrimination complaint being made.

29. On September 9, 2025, Defendant removed the duty of Environmental Services from Plaintiff and told him he would only be the Director of Maintenance and Plan Operations. Defendant also removed all Plaintiff's subordinates. Defendant also

verbally informed Plaintiff that he was being changed from a salary to hourly employee.

30. Defendant did not state there was a reduction in force, and no other employee's employment status was changed from salary to hourly except for Plaintiff.

31. Plaintiff complained on September 24, 2025 via email that the new EVS Director (Mike) spoke to Plaintiff in an extremely hostile and aggressive nature when Plaintiff advised him to use tape instead of nails to hang an item. Because the director used threatening language telling Plaintiff "I'm telling you now to get out of my face", Plaintiff reported the interaction to HR and the CEO and informed Defendant that a witness was present for the mistreatment.

32. Defendant then suspended Plaintiff beginning approximately September 25, 2025 through approximately October 10, 2025, for "violating policy", although Defendant never informed Plaintiff of the policy that Plaintiff violated.

33. Plaintiff later learned that the EVS Director had been suspended and returned to work the following Tuesday, while Plaintiff was suspended "until further notice".

34. Plaintiff's coworker informed him that the CEO stated in a EVS staffing meeting, "I didn't want to pull from trash just to place it back with trash."; and the coworker understood the comment was referring to Plaintiff as trash.

35. On September 29, 2025, Defendant then stated Plaintiff was suspended because of missing keys, an allegation Plaintiff knew nothing about and no further information was provided to Plaintiff.

36. Plaintiff and Defendant engaged in mediation on October 10 regarding Plaintiff's EEOC charge of discrimination previously filed.

37. Immediately following the mediation, three (3) hours after it concluded, Defendant terminated Plaintiff on October 10, 2025, because (1) he had received a Final Written Warning on May 28, 2025, regarding a policy violation, and (2) received a second Final Written Warning on August 22, 2025 for performance and behavioral issues related to inappropriate comments to two female employees during a safety meeting, and (3) was suspended September 25, 205, following a verbal altercation with a department supervisor. Plaintiff has refuted each of these false allegations as they had been presented by Defendant and specifically cited retaliation for the mistreatment.

38. Plaintiff signed a dual filed SHAC/EEOC charge of discrimination (EEOC 14C-2025-01120) on October 13, 2025, received by the EEOC on October 14, 2025, regarding this retaliation after engaging in the protected activity of complaining of sexual harassment, hostile work environment and retaliation and of filing an EEOC complaint in July 2025.

39. Plaintiff filed for unemployment benefits once terminated, and the SC Department of Employment and Workforce made a finding that "there is insufficient evidence of improper actions connected with work" and Plaintiff was awarded unemployment benefits.

40. Plaintiff was supervised, managed, and evaluated in ways unequal to female employees and unequal to male employees who did not complain of sexual harassment.

41. Defendant treated Plaintiff differently on the basis of sex and in retaliation of his protected activity of making complaints, internally and externally, of sexual

harassment and retaliation, all within the terms, privileges, and conditions of employment.

42. Defendant cannot articulate and provide proof of a legitimate business reason for the unequal treatment of Plaintiff with respect to terms and conditions of employment, to include discipline, employee classification and compensation, heightened scrutiny and work assignments.

43. Defendant failed to apply policies and procedures in a fair non discriminatory or non retaliatory manner.

44. Defendant's facially neutral policies and procedures were applied in a discriminatory and retaliatory manner, or created and revised for the purpose of justifying discriminatory conduct, all in a manner which had a disparate impact on Plaintiff.

45. As a result of the acts of discrimination and retaliation within Defendant's employment practices and work environment, Plaintiff had suffered loss of employment, compensatory damage, emotional harm and distress, financial distress, as well as harm to his personal and professional reputation and loss of prospective employment relationships.

## COUNT I
## (TITLE VII VIOLATION – Sex and Retaliation)

46. Plaintiff repeats and realleges each and every allegation contained in preceding paragraphs of this Complaint.

47. Plaintiff, a male employee of Defendant, was performing satisfactorily in his employment with no evidence of actual policy violations.

48. Plaintiff was subjected to unwanted and unwelcomed sexual advances from an employee or consultant of Defendant, to which Plaintiff objected.

49. Immediately after objecting to sexual harassment with the harasser and Defendant HR, Defendant disciplined Plaintiff for pretext reasons that were unsupported by any independent objective evidence.

50. Plaintiff was subjected to improper comments based on sex by the CEO when discussing her being informed that he had son working.

51. Plaintiff was subjected to micro aggressions such as heightened scrutiny, unequal treatment and micro management, all as a result of objecting to sexual harassment.

52. Plaintiff engaged in further protected activity of filing a complaint with SC Human Affairs and EEOC, and complaining to corporate of retaliation and participating in SCHAC/EEOC mediation.

53. Defendant subjected Plaintiff to adverse employment action as a result of his protected activity, including but not limited to:

a. After objecting to sexual harassment and complaining, Defendant CEO and HR representative notified Plaintiff on May 28, 2025, that he was placed on a final written warning, despite Plaintiff not having any previous disciplinary actions or write ups.

b. On August 12, 2025, almost immediately after the EEOC received the complaint of discrimination filed July 30, 2025, Defendant CNO, CEO and HR representatives called Plaintiff into a meeting claiming his work performance was below standard. When Plaintiff attempted to refute this allegation, he was ordered to quit speaking.

c. On August 22, 2025, Defendant issued Plaintiff another "final warning" because he used the term "you cats" when referring to a group of people in a safety meeting and the CEO said it was "offensive" for a 58 year old man to say "you cats get it".

d. On September 9, 2025, after Plaintiff complained to corporate via email on August 22, 2025, of retaliation for filing an EEOC/SCHAC complaint, Defendant removed the duty of Environmental Services from Plaintiff and told him he would only be the Director of Maintenance and Plan Operations. Defendant also removed all Plaintiff's subordinates. Defendant also verbally informed Plaintiff he was being changed from a salary to hourly employee.

e. Defendant then suspended Plaintiff beginning approximately September 25, 2025 through approximately October 10, 2025, for "violating policy", although Defendant never informed Plaintiff of the policy that Plaintiff violated.

f. Immediately following the EEOC/SHAC mediation between Plaintiff and Defendant, three (3) hours after it concluded, Defendant terminated Plaintiff on October 10, 2025.

54. Plaintiff was clearly held to a different standard with respect to terms and conditions of employment such as work assignments, scope of work, employee classification from salary to hourly, unequal discipline, unwarranted discipline without proper investigation, complaints of retaliation, and termination.

55. After Plaintiff engaged in the protected activity of complaining to Defendant of sexual harassment and retaliation and of filing a discrimination complaint, Plaintiff

was subjected to the adverse employment action of a retaliatory hostile work environment.

56. The foregoing actions of Defendant and its representatives discriminated and retaliated against Plaintiff on the basis of sex and retaliation all in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2.

57. Plaintiff has suffered injury, including immediate and irreparable injury as described in the statement of facts, as a direct and proximate result of the Defendant's violation of all said rights as alleged herein.

**<u>COUNT II</u>**
**(SOUTH CAROLINA HUMAN AFFAIRS LAW-– Sex and Retaliation)**

58. Plaintiff repeats and realleges each and every allegation contained in preceding paragraphs of this Complaint.

59. Plaintiff, a male employee of Defendant, was performing satisfactorily in his employment with no evidence of actual policy violations.

60. Plaintiff was subjected to unwanted and unwelcome sexual advances from an employee or consultant of Defendant, to which Plaintiff objected.

61. Immediately after objecting to sexual harassment with the harasser and Defendant HR, Defendant disciplined Plaintiff for pretext reasons that were unsupported by any independent objective evidence.

62. Plaintiff was subjected to improper comments based on sex by the CEO when discussing her being informed that he had son working.

63. Plaintiff was subjected to micro aggressions such as heightened scrutiny, unequal treatment and micro management, all as a result of objecting to sexual harassment.

64. Plaintiff engaged in further protected activity of filing a complaint with SC Human Affairs and EEOC, and complaining to corporate of retaliation and participating in SCHAC/EEOC mediation.

65. Defendant subjected Plaintiff to adverse employment action as a result of his protected activity, including but not limited to:

a. After objecting to sexual harassment and complaining, Defendant CEO and HR representative notified Plaintiff on May 28, 2025, that he was placed on a final written warning, despite Plaintiff not having any previous disciplinary actions or write ups.

b. On August 12, 2025, almost immediately after the EEOC received the complaint of discrimination filed July 30, 2025, Defendant CNO, CEO and HR representatives called Plaintiff into a meeting claiming his work performance was below standard. When Plaintiff attempted to refute this allegation, he was ordered to quit speaking.

c. On August 22, 2025, Defendant issued Plaintiff another "final warning" because he used the term "you cats" when referring to a group of people in a safety meeting and the CEO said it was "offensive" for a 58 year old man to say "you cats get it".

d. On September 9, 2025, after Plaintiff complained to corporate via email on August 22, 2025, of retaliation for filing an EEOC/SCHAC complaint, Defendant removed the duty of Environmental Services from Plaintiff and told him he would only be the Director of Maintenance and Plan Operations.

Defendant also removed all Plaintiff's subordinates. Defendant also verbally informed Plaintiff he was being changed from a salary to hourly employee.

e. Defendant then suspended Plaintiff beginning approximately September 25, 2025 through approximately October 10, 2025, for "violating policy", although Defendant never informed Plaintiff of the policy that Plaintiff violated.

f. Immediately following the EEOC/SHAC mediation between Plaintiff and Defendant, three (3) hours after it concluded, Defendant terminated Plaintiff on October 10, 2025.

66. Plaintiff was clearly held to a different standard with respect to terms and conditions of employment such as work assignments, scope of work, employee classification from salary to hourly, unequal discipline, unwarranted discipline without proper investigation, complaints of retaliation, and termination.

67. After Plaintiff engaged in the protected activity of complaining to Defendant of sexual harassment and retaliation and of filing a discrimination complaint, Plaintiff was subjected to the adverse employment action of a retaliatory hostile work environment.

68. The foregoing actions of Defendant and its representatives discriminated and retaliated against Plaintiff on the basis of sex and retaliation all in violation of South Carolina Human Affairs Law, SC Code Section 1-13-10, et. seq., and the unlawful employment practices enumerated in SC Code Section 1-13-80, et seq.

69. Plaintiff has suffered injury, including immediate and irreparable injury as described in the statement of facts, as a direct and proximate result of the Defendant's violation of all said rights as alleged herein.

**WHEREFORE**, Plaintiff respectfully prays that this Court:

A. Award Plaintiff costs of this action, together with reasonable attorney's fees as provided by 42 U.S.C. §12205 and 42 U.S.C. §12117; under 42, U.S.C. §2000e-5(k) and SC Human Affairs Law;

B. Direct Defendant to pay Plaintiff compensatory damages; damages for his emotional distress, mental anguish and humiliation; and other compensatory and punitive damages allowable under 2 U.S.C. §1311(b)(3) and 42 U.S.C. §12117(a) and SC Human Affairs Law in the amount to be determined by a jury;

C. Award Plaintiff such other and further relief as this Court deems just and proper.

WUKELA LAW FIRM

By: s/ Pheobe A. Clark

**Pheobe A. Clark**, Federal ID No. 9888
Post Office Box 13057
Florence, SC 29504-3057
Phone: (843) 669-5634
Fax: (843) 669-5150
pclark@wukelalaw.com

August 21, 2026